UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| FERDELL FABIAN HARVEY, | ) | |
| | ) | |
| Petitioner, | ) | Civil No. 6:10-CV-235-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| ERIC D. WILSON, Warden, | ) | **MEMORANDUM OPINION** |
| | ) | **& ORDER** |
| Respondent. | ) | |

\*\* \*\* \*\* \*\* \*\*

Petitioner Ferdell Fabian Harvey is presently confined at the United States Penitentiary McCreary in Pine Knot, Kentucky. Harvey has submitted a *pro se* Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, concerning his conviction on a disciplinary charge he received while he was an inmate at the United States Penitentiary in Bruceton Mills, West Virginia ("USP-Hazelton"). For relief, Harvey seeks the expungement of this disciplinary charge/conviction and restoration of twenty-seven (27) days of Good Time Credit on his sentence that was part of the penalty he received for being found guilty of the disciplinary charge. Respondent having filed a response to Harvey's § 2241 petition [R. 10], and Harvey having filed a reply thereto [R. 13], this matter is ripe for review. For the reasons stated below, the Court concludes that Harvey is not entitled to the relief he seeks and will dismiss his § 2241 petition.

**I.**

Harvey is currently serving a ten-year sentence for assaulting a correctional officer in violation of 18 U.S.C. §§ 111(A), 111(B) and 2. His projected release date is April 14, 2012. From June 15, 2005, to November 7, 2007, Harvey was an inmate at USP-Hazelton. During that

time, he was found guilty of a disciplinary prison offense. A portion of his penalty included the loss of twenty-seven (27) days of good conduct time. In his habeas petition, he asserts that his due process rights were violated by the manner in which prison officials charged, handled, and processed an incident report in that (1) two different incident reports were completed concerning the same incident occurring on March 21, 2007; (2) the Code violations charged were based on falsified evidence; and (3) the DHO did not consider the videotape of the incident. Petitioner requests the expungement of the subject incident report (No. 1579817) and the restoration of twenty-seven (27) days of good time credit.

Prior to this charged incident, Harvey was employed by Unicor. On March 21, 2007, at 10:25 a.m., Unicor Fabric Worker Supervisor, R. Hernandez, ("Hernandez") told the Unicor inmate workers to report back to their assigned work areas and to not line up for lunch until they are called by section. Hernandez reported that Harvey did not return to his assigned area as directed and that instead, he just sat on a material car with his back turned to Hernandez. Noticing that Harvey had not complied with this request, Hernandez directly told Harvey to return to his area. In response, Harvey stood up, rushed over to Hernandez, and got in his face. Hernandez stepped back and ordered Harvey to step into the factory manager's office. Harvey stated that he was not going anywhere and told Hernandez "you don't talk to me that way" and kept moving toward Hernandez in a very aggressive manner raising his hands and, seeming to be making a fist. Observing Harvey's behavior, Factory Manager M. Corona ("Corona") stepped between Hernandez and Harvey and ordered Harvey to step into the office. Harvey refused and kept yelling at staff that he was not going to do anything staff said. Lt. Clemmonds was then called over to Unicor, and he escorted Harvey to the Lieutenant's Office. Hernandez stated that

due to Harvey's aggressive behavior, he believed that if Corona had not stepped in between Harvey and himself, Harvey would have assaulted him. [*See* R. 10, Ex. 1 at ¶¶ 6-7; Exs. 3-4, Attachs. B & C.]

On March 21, 2007, Hernandez charged Harvey in an Incident Report with "Interfering with staff in performance of duties," a Code 298 violation. [R. 2, Ex. A-17, p. 24]. The Incident Report states that the violation occurred on March 21, 2007, at 10:25 a.m., and was delivered to Harvey on March 21, 2007, at 3:00 p.m. Thereafter, on March 23, 2007, Hernandez completed another Incident Report relative to the same incident that occurred on March 21, 2007, at 10:25 a.m., which charged Harvey with an additional infraction: "Threatening another with bodily harm, or any other offense," a Code 203 violation. This new Incident Report was delivered to Harvey on March 23, 2007, at 5:20 p.m.

The investigation of the Incident Report commenced on March 23, 2007. [*See* R. 10, Ex. 1, Attach. C.] During the investigation of the Incident Report both the March 21, 2007 and the March 23, 2007 reports were included. [*Id.*] Harvey was advised of his rights and was provided with an opportunity to provide a statement and/or request witnesses. He provided a statement, but he did not request any witnesses. The Incident Report was then referred to the Unit Disciplinary Committee ("UDC") for a hearing. [*Id.*]

On March 26, 2007, the UDC held a hearing on the charges in the Incident Report. [*See id.* at ¶9.] During the investigation of the Incident Report, Harvey was once again provided with an opportunity to comment on the incident to which he provided two written statements. The UDC proceeded to refer the charges to the Disciplinary Hearing Officer ("DHO") for further

hearing because the sanctions for 200 level Codes[1] cannot be imposed at the UDC level. If found guilty by the DHO, the UDC recommended sanctions of thirty (30) days disciplinary segregation, a loss of twenty-seven (27) days of GTC, and a loss of his Unicor job.

On March 26, 2007, the UDC advised Harvey of his rights before the DHO. [*See id.* at ¶9, Attach. D.] The UDC also advised Harvey of the charges (Code No. 208 & 298) and asked him if he would like to have a staff representative and/or present a witness at the hearing. In response, Harvey requested to have Unit Manager C. Pulice as a staff representative, and stated that he wanted the Surveillance Video as a witness. [*Id.*]

On April 20, 2007, DHO Debbie J. Lohr conducted the DHO hearing. [*See id.* at ¶10.] During the hearing, Harvey requested a Staff Representative, and Unit Manager C. Pulice appeared on his behalf. Pulice advised the DHO that, at Harvey's request, he reviewed the video recording of the incident. Pulice told the DHO that the video showed Harvey and Hernandez arguing, that there was some movement of the hands, and that the exchange between them became heated. Pulice also stated that the video showed Corona step between the two, but that he could not see whether Harvey's fists were balled up. [*Id.* at ¶11.] Other than his request for Pulice to testify as to the contents of the surveillance video, Harvey stated that he felt as though he was being bullied and just went off. He argued that he did not make a fist and provided the DHO with the two written statements he had prepared for the UDC hearing. [*Id.*]

---

[1]The various levels of BOP offenses are listed in 28 C.F.R. § 541.13, Table 3. The most serious offenses (Greatest Category) are listed in Code Nos. 100-199; the next level of offenses (High Category) are listed in Code Nos. 200-299; the next level of offenses (Moderate Category) are listed in Code Nos. 300-399; and the final and lowest level of offenses (Low Moderate Category) are listed in Code Nos. 400-499.

In reaching her decision, the DHO considered the following documentary evidence: 1) Incident Report; 2) Investigation; 3) Memorandum from M. Corona, Factory Manager dated March 21, 2007; 4) Memorandum from P. Landon, Fabric Worker Supervisor dated March 21, 2007; 5) both written statements from the Petitioner; and 6) Pulice's testimony as to the contents of the surveillance video. The DHO concluded that Harvey's actions were unjustified, and that even though the issue of whether he made a fist during the confrontation with Hernandez could not be conclusively determined, Harvey's conduct was disruptive, at the very least. The DHO also found that Harvey caused Hernandez to feel threatened and to question what Harvey's "next move" might be. The DHO found that Harvey's demeanor supported the conclusion that he was attempting to intimidate Hernandez by stepping up to him in an aggressive manner while yelling and waving his arms. The DHO concluded that such behavior is clearly disruptive to the orderly running of the institution and creates a potentially volatile situation. [*Id.* at ¶¶ 12-14.]

In the final analysis, the DHO found that based on the greater weight of the evidence, Harvey's conduct fell within the HIGH severity category of offenses in violation of Code 299, Conduct which Disrupts the Security or Orderly Running of a BOP Facility, Most Like Code 203, Threatening Another with Bodily Harm or Any Other Offense. [*Id.* at ¶13.] The DHO sanctioned Harvey to thirty (30) days Disciplinary Segregation, loss of twenty-seven (27) days of GTC, and the loss of his Unicor job. [*Id.* at ¶16.] The DHO advised Harvey of his appellate rights and provided him with a copy of the DHO report on July 9, 2007.

Petitioner pursued and exhausted his administrative remedies relative to this matter. On February 25, 2008, at the final administrative review level, his appeal was denied for the following reasons:

5

**Administrative Remedy No. 460822-Al**
**Part B -Response**

You appeal the DHO's decision of April 20, 2007, for Conduct Which Disrupts, Code 299, most like Threatening, Code 203. As relief, you request the incident report be expunged.

Our review reveals substantial compliance with Program statement 5270.07, Inmate Discipline and Special Housing Units. This P.S. states that the decision of the DHO shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence. Accordingly, we find that the DHO detailed in Section V of the DHO report the specific evidence relied upon to support a finding that you committed the above prohibited act, and we agree that it is reasonable to make that finding. Therefore, we find that the required disciplinary procedures were substantially followed, the greater weight of the evidence supports the decision, and the sanctions imposed were appropriate for the offense and in compliance with policy.

Your appeal is denied.

[R. 2-1, Ex. "A-26," p. 33.]

## II.

Pursuant to 18 U.S.C. § 4042(a)(3), the BOP administers an inmate disciplinary process to promote the safe and orderly running of its correctional institutions. Upon arriving at a BOP facility, all inmates receive written notice of their rights and responsibilities, prohibited acts within the institution, and the specifics of the disciplinary system. The violation of a prohibited act carries sanctions corresponding to the severity of the offense. Sanctions range from disciplinary segregation, loss of GTC, loss of privileges, to verbal warnings. *See* 28 C.F.R . § 541.13, Prohibited acts and disciplinary severity scale.

The BOP disciplinary process is fully outlined in the Code of Federal Regulations, Title 28, Sections 541.10 through 541.23. These regulations dictate the manner in which disciplinary action may be taken when a prisoner violates or attempts to violate institutional rules. The first

step in the disciplinary process requires the filing of an incident report and an official investigation pursuant to 28 C.F.R. § 541.14. Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.15. If the UDC finds that the inmate has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to the DHO for a hearing. 28 C.F.R. § 541.15(h).

In *Wolff v. McDonnell*, 418 U.S. 539 (1974) the United States Supreme Court recognized that prison disciplinary proceedings are not part of a criminal prosecution and held that the full panoply of rights due to a defendant in such proceedings do not apply. However, the Court recognized that the Due Process Clause provides certain minimum protections for inmates facing the loss of good time credits as a disciplinary sanction. The Court held that when a prison disciplinary hearing may result in the loss of good conduct time (GTC) credits, due process requires that the inmate receive: 1) written notice of the charges at least twenty-four (24) hours in advance of the disciplinary hearing; 2) a written statement by the fact finder as to evidence relied on and reasons for the disciplinary action; 3) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; and 4) the assistance of staff or a competent inmate when the inmate is illiterate or when the issues are complex. *Wolff v. McDonnell*, 418 U.S. at 556, 564-566. *See also Hatch v. Wilson*, No. 09-109-GFVT, 2009 WL 2877222 (E.D. Ky. 2009) (citing *Allen v. Reese*, 52 F. App'x 7, 8 (8th Cir. 2002) (holding that federal prisoner's right to due process was satisfied, as he was given (i) written notice of the charges against him, (ii) the right to call witnesses, and (iii) a written report of the DHO's decision)).

Consistent with the minimum procedural protections required by *Wolff*, the BOP disciplinary procedures, as set forth in 28 C.F.R. § 541.17, require the following: (1) 24-hour advance written notice of the charge before the inmate's initial appearance before the DHO (this right may be waived), 541.17(a); (2) an inmate shall be provided a staff representative at the DHO hearing, if so desired, 541.17(b); (3) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, 541.17(c); (4) the inmate is entitled to be present throughout the hearing, 541.17(d); (5) the DHO must prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO findings, the DHO decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for the imposition of sanctions, 541.17(g); (6) a written copy of the DHO's decision and disposition is to be provided to the inmate within ten (10) days, 541.17(g). The Court must next determine if the BOP's procedures meet or exceed the due process requirements for prison disciplinary proceedings as prescribed by the Supreme Court in *Wolff*.

BOP Program Statement 5270.08, Inmate Discipline & Special Housing Units, states in pertinent part:

> f. The DHO shall consider all evidence presented at the hearing. The decision of the DHO shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence. The DHO shall find that the inmate either:
>
> (1) Committed the prohibited act charged and/or a similar prohibited act if reflected in the Incident Report; or
>
> (2) Did not commit the prohibited act charged or a similar prohibited act if reflected in the Incident Report. (*Emphasis added*).

As seen from Program Statement 5270.07, in order to support the loss of good time credits, the DHO's decision need not comport with the requirement of proof beyond a reasonable doubt, the standard applicable to criminal trials. In *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445 (1985), the Supreme Court set out the constitutional evidentiary standard to be used when courts review prison discipline decisions. The Court held that the Due Process Clause is satisfied if there is "some evidence" to show that the inmate committed some offense. *Hill*, 472 U.S. at 455. The Court declined to adopt a more stringent evidentiary standard as a constitutional requirement, stating: "Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id*. at 456.

The "some evidence" standard is a lenient one, requiring no more than "a modicum of evidence," and is met if there is *any evidence* in the record that could support the [DHO's] decision. *Id*. at 455-56 (emphasis added). The "some evidence" standard requires only that the "disciplinary decision is not arbitrary and does have evidentiary support." *Id*. at 457. *See Hatch v. Wilson*, *supra*. (district court denied a petition for writ of habeas corpus alleging a violation of due process rights for failure to call a witness on petitioner's behalf because record revealed "some evidence" supporting the DHO conclusions); s*ee also Kuttab v. Jeter*, 132 F. App'x 23, 2005 WL 1170464 (5th Cir. 2005) ("Because the disciplinary decisions were supported by some evidence, [Petitioner] has not shown that the disciplinary sanctions were arbitrary or capricious.")

The Supreme Court noted in *Hill* that ascertaining whether this standard [some evidence]

9

is satisfied does not require examination of entire record, independent assessment of the credibility of witnesses, or the weighing of the evidence. Instead, the relevant question is whether there is any evidence in the records that could support the conclusion reached by the DHO. *Hill*, 472 U.S. at 455-56. Thus, upon review of a disciplinary proceeding, the district court should determine only whether the DHO's decision to revoke good time credits has some factual basis, *i.e.*, whether there is any evidence that could support the finding. *Id. See also Hatch v. Wilson, supra* at 4 ("The threshold requirement of 'some evidence' is a relatively low one"); *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994) ("[P]rison disciplinary proceedings will be overturned only where there is no evidence whatsoever to support the decision of prison officials"). "The court is not free to retry the disciplinary charge and substitute its opinion for that of the [DHO]." *Novey v. Fed. Bureau of Prisons*, No. 1:06-CV-508, 2008 WL 4280342, 2 (E.D. Tex. 2008). *See also Sarmineto v. Hemingway*, 93 F.Appx. 65, 68 (6th Cir. 2004) (credibility determinations of hearing officers cannot be disturbed on appeal.)

Therefore, the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good-time credits. *Hill*, 472 U.S. at 455 (It is not the court's role to "second guess the disciplinary board's factual findings or decisions"); *See also Humphreys v. Hemingway*, 77 F. App'x 788, 789 (6th Cir. 2003) (Because the DHO's decision is supported by "some evidence" in the record, petitioner is not entitled to habeas relief on his claim); *Bachelder v. Patton*, No. 06-cv-148-HRW, 2007 WL 108415 (E.D. Ky. 2007) (Petitioner challenged the sufficiency of the evidence upon which he was convicted in a disciplinary hearing. Court found that "the law is clear that a DHO need not accept what the inmate perceives to be the 'best evidence' or the most convincing or persuasive set of facts; there

need only be 'some evidence' to support disciplinary decision."); *Laor v. Fed. Bureau of Prisons*, No. 08-3532 (RBK), 2009 WL 1410728 (D.N.J. 2009) (The DHO report plainly shows that it was not so devoid of evidence that the findings of the DHO were without support or otherwise arbitrary); *Sinde v. Gerlinski*, 252 F. Supp. 2d 144, 150 (M.D. Pa. 2003) ("If there is 'some evidence' to support the decision of the hearing examiner [DHO], the court must reject any evidentiary challenges by the plaintiff"). "Due process 'does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board [DHO]', and a disciplinary finding can be upheld on even 'meager' evidence, as long as 'the record is not devoid of evidence that the findings of the disciplinary board [DHO] were without support or otherwise arbitrary.'" *Hill,* 472 U.S. at 457.

Based on the foregoing case law, the Court concludes that the BOP's procedures meet or exceed the due process requirement for prison disciplinary proceedings as prescribed by the Supreme Court in *Wolff* and its progeny. The Court must next consider whether the BOP observed each of these due process requirements during the course of charging and processing the disciplinary offense as issue.

*First*, Harvey received ample advance notice of the charges against him. The original incident report was delivered on the date of the incident, March 21, 2007, and the superseding incident report was delivered to Harvey on the date it was prepared, March 23, 2007. Also, on March 26, 2007, Harvey was provided with notice of the hearing before the DHO. Moreover, both incident reports were prepared and delivered prior to Harvey's UDC and DHO hearing. The UDC hearing was conducted on March 26, 2007, three days after receiving notice of the March

23, 2007 superseding Incident Report and twenty-five days prior to the April 20, 2007 DHO hearing. [*See* R. 10, Attachs. C & D.]

The fact that the March 21, 2007 incident report was re-written on March 23, 2007, to add the charge of "Threatening another with bodily harm, or any other offense", in violation of Code 203, does not violate the established due process requirements. The rewritten incident report occurred prior to the UDC & DHO hearing, Harvey was provided with timely notice of the rewritten incident report, and Harvey was charged and made to defend his conduct based only on the March 23, 2007 incident report. Therefore, the fact that the incident report was re-written does not, in and of itself, violate Harvey's due process rights. *See Rumbaugh v. O'Brien*, No. 06-CV-05-HRW, 2006 WL 527057 (E.D. Ky. 2006) (The Court noted that even though there were two re-writes of the incident report and a third incident report was later written by a different officer, the re-writes were prepared prior to the DHO hearing, the Petitioner received timely notice of the re-written incident reports, and the Petitioner was charged and made to defend his conduct based on only one "single" incident report. Thus there was no violation of the "single" report policy in 28 C.F.R. § 541.17(i).)

*Second*, Harvey was offered the opportunity to have a staff representative present at the DHO hearing. Harvey did not waive his right to a staff representative and requested Unit Manager C. Pulice as his staff representative. Acting on Harvey's behalf, Mr. Pulice reviewed the surveillance video of the incident and testified at the DHO hearing about the contents of the video. [R. 10, Attach. D.]

*Third*, Harvey had an opportunity to make a statement, to present documentary evidence, and to call witnesses to testify on his behalf during the DHO hearing. While Harvey did not

request any witnesses during the DHO hearing, he did provide the DHO with a verbal statement and submitted for consideration two typewritten statements. Moreover, Harvey was allowed to introduce the contents of the surveillance video through the testimony of his staff representative, Mr. Pulice. [*See id.*]

*Fourth*, Harvey was allowed to be present throughout the DHO hearing. [*See id.*]

*Fifth*, the DHO prepared a record of the proceedings that documented the advisement of the inmate's rights, the DHO findings, the DHO decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for the imposition of sanctions. [*See id.*]

*Finally*, the DHO made a decision on May 31, 2007, and a written copy of the DHO's decision and disposition was provided to Harvey on July 9, 2007. Even though, 28 C.F.R. § 541.17(g) requires the DHO to ordinarily give the inmate a written copy of the decision and disposition within ten days of the DHO decision, if a prisoner does not receive the DHO report within ten days of the decision, the prisoner is not entitled to habeas relief, so long as the delay had no prejudicial effect on the prisoner's administrative remedies. *See Mitchell v. Zych*, No. 2:09-CV-12551, 2009 WL 3497796, * 4 (E.D. Mich. 2009) (citing *Cook v. Warden, Fort Dix*, 241 F. App'x 828, 829 (3rd Cir. 2007)). In the present case, the delay in providing the DHO report had no negative effect on Harvey's ability to file and exhaust timely administrative remedies.

Based on the foregoing, the Court concludes that the BOP observed the required procedures and that there was no denial of Harvey's Due Process rights. Therefore, Harvey's allegations of a Due Process violation fail.

The Court also concludes that there was sufficient evidence to support the charge and the sanctions imposed against Harvey. The Supreme Court has held that procedural due process is not satisfied unless the findings of the DHO are supported by *some evidence* in the record. *Hill* at 454-55. The DHO report demonstrates that the DHO considered and relied upon the following evidence in her determination that Harvey had violated Code 299, Conduct which Disrupts the Security or Orderly Running of a BOP Facility, Most Like Code 203, Threatening Another with Bodily Harm or Any Other Offense: (1) the March 23, 2007, Incident Report; (2) the investigation of the Incident Report; (3) Memorandum dated March 21, 2007 by M. Corona, Factory Manager; (4) Memorandum dated March 21, 2007 by P. Landon, Fabric Worker Supervisor; (5) both typewritten statements from the Petitioner; and (6) Pulice's testimony as to the contents of the surveillance video. [*See* R. 10, Attach. D at ¶12.] Thus, the DHO report demonstrates that there was more than "some evidence," in compliance with *Hill,* to support the DHO's finding of guilt and imposition of sanctions. *See Cosgrove v. Rios*, No. 7:08-CV-109-KKC, 2008 WL 4706638 (E.D. Ky. 2008) (Court found that DHO review of reports and memoranda constituted "some evidence" and was enough to support the DHO's conclusion and decision to revoke inmate's GTC, impose disciplinary segregation, and loss of privileges). There is ample evidence, more than just "some evidence," to support the DHO's findings, and there no indication of falsified evidence.

Although the superceding Incident Report charged Harvey with violations of Code 203 and 298, he was convicted of a Code 299 violation. Such a difference is of no moment. Statement 5270.08, Inmate Discipline & Special Housing Units, states in pertinent part:

> f. The DHO shall consider all evidence presented at the hearing. The decision of the DHO shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence. The DHO shall find that the inmate either:
>
> (1) Committed the prohibited act charged *and/or a similar prohibited act if reflected in the Incident Report;* (emphasis added).

28 C.F.R. 541.17(f)(1) sets out the BOP's procedures before the DHO and provides the operative language for Program Statement 5270.08, explicitly authorizing that a DHO may find that an inmate has "[c]ommitted the prohibited act charged and/or a similar prohibited act if reflected in the incident report." Moreover, case law supports the DHO's authority to amend a charge if a similar prohibited act is supported by the Incident Report. *See Yates v. Young*, 772 F.2d 909 (6th Cir. 1985) (Petitioner alleged he was found guilty of misconduct that was not charged in the incident report. The Sixth Circuit found that the Petitioner failed to demonstrate that he was deprived of his due process rights. The petitioner received notice of the charge through the incident report and the guilty finding was supported by sufficient evidence); *Marin v. Bauknecht*, No. 8:07-0165-JFA-BHH, 2007 WL 3377152(D.S.C.2007) (Petitioner contended the DHO violated BOP policy when she changed the code violation. The Court held that the facts reflected in the incident report clearly support a violation of the code charged by the DHO. Accordingly, the DHO did not err in amending the charge.); *Davis v. O'Brien*, No. 7:08-cv-200, 2008 WL 631172(W.D. Va. 2008) (Petitioner contended that the incident report should be expunged because he was originally charged with offense code 307, but was found guilty by the DHO of offense code 312. Court held that the petition fails because 28 C.F.R. § 541.17(f)(1) explicitly provides that a DHO may find that an inmate committed the prohibited act charged

15

and/or a similar prohibited act if reflected in the Incident Report) (citing *Noesi v. Bledsoe, et al.*, No. 7:05-CV-451, 2006 WL 167498 (W.D.Va. 2006) (internal citation omitted)).

The Court has no authority to weigh the evidence or to judge the strength of any particular defense the petitioner may present. Instead, the Court may only determine if the DHO had *any evidence* in the records to support her conclusion. *See Hill,* 472 U.S. at 455-56. In the present case, the March 23, 2007 incident report provided Harvey with notice of the potential charges and the DHO report reflects that there was sufficient evidence to support a violation of Code 299, Most Like Code 203. Consequently, Harvey's due process rights were not violated by the DHO's guilty finding.

Concerning the video tape evidence, courts that have addressed claims from prisoners who have challenged a DHO's exclusion of, or failure to independently review, the video tape of a contested incident have concluded that the DHO decision not to review video tape evidence does not constitute a denial of due process under *Hill* and *Wolff*. *See Davis v. J.C. Zuercher*, No. 7:08-CV-207-KKC, 2009 WL 585807 (E.D. Ky. 2009) (Claim that inmate or his representative should have been allowed to view video tape of event leading to incident report lacks merit and shall be dismissed. Disciplinary proceeding complied with requirements established in *Wolff*.); *Cruzen v. Haynes*, No. 1:06CV137, 2007 WL 3146383 (N.D.W.V. 2007) (Due process satisfied because there was "some evidence" to support the conviction, even without the benefit of the DHO independently watching video tape of incident.); *Neal v. Casterline*, 129 F. App'x 113 (5th Cir. 2005) (DHO refusal to review surveillance videotape of incident did not violate due process. The DHO based his decision on incident report and testimony, this was fully adequate to support DHO decision.)

In the action *sub judice,* the DHO, in an abundance of caution, considered the testimony of the staff member who had reviewed the surveillance video of the incident. The DHO's consideration of the testimony by staff representative C. Pulice about the surveillance video confirmed the DHO's finding that Harvey violated Code 299, Conduct which Disrupts the Security or Orderly Running of a BOP Facility, Most Like Code 203, Threatening Another with Bodily Harm or Any Other Offense.

Consequently, Harvey has no valid basis to request that the incident report and the sanctions imposed be expunged. There has been no violation of Harvey's due process rights, and there was sufficient evidence to support the DHO's disciplinary sanctions. Harvey has failed to establish that he is entitled to habeas relief.

### III.

Accordingly, **IT IS ORDERED** as follows:

(1) The habeas petition filed by Ferdell Fabian Harvey, pursuant to 28 U.S.C. § 2241, [R. 2] is **DENIED;**

(2) This action is **DISMISSED WITH PREJUDICE**; and,

(3) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of Respondent, Eric D. Wilson, Warden.

This the 5th day of May, 2011.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge